UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARMOND M. SCHAEFER,

        Plaintiff,

v.

        Case Number 07-10169-BC
        Honorable Thomas L. Ludington

AXA EQUITABLE LIFE INSURANCE
COMPANY, *d/b/a as Equitable*, and
DISABILITY MANAGEMENT SERVICES,
INCORPORATED,

        Defendants.
_____/

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Harmond Schaefer's ("Plaintiff"), Defendant AXA Equitable Life Insurance Company's ("Equitable") former sales agent and holder of four Equitable disability insurance policies, filed a complaint alleging that Equitable and Defendant Disability Management Services, Incorporated ("DMS," collectively "Defendants") incorrectly interpreted the policies. Plaintiff's complaint alleges causes of action for breach of contract, "conspiracy to wrongfully deny benefits in violation of unfair and deceptive trade practices statutes," promissory estoppel, and a claim for benefits under ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B). Plaintiff's and Defendants' motions for summary judgment are before the Court.

Defendants' motion for summary judgment contends that Plaintiff's claim for breach of contract is barred by a contractual provision requiring legal actions to be brought within three years of filing the proof of loss. Second, Defendants contend that Plaintiff's "conspiracy" claim must be dismissed because Plaintiff has not alleged an underlying tort. Third, Defendants assert that Plaintiff's promissory estoppel claim must be dismissed because such a claim can not exist where

an enforceable contract exists. Finally, Defendants contend the ERISA claim must be dismissed because the subject disability policies are not an "employee benefit" within the meaning of 29 U.S.C. § 1132.

Plaintiff's motion asserts he is entitled to summary judgment of his breach of contract claim. He stresses there is no factual dispute that Defendants "fail[ed] to properly administrate and pay certain benefits under the subject policies." Dkt. # 33 at 1. Plaintiff's motion focuses on the substantive interpretation of the policies' categorization of "renewal commissions" and whether cost of living adjustment ("COLA") payments are due under policies purchased in 1976 and 1979.

Previously, the instant motions were scheduled for hearing in April of 2008, but the Court adjourned that hearing. On the date that the hearing was scheduled, the Court held a status conference and permitted the parties two weeks time to consensually resolve the case. The Court informed the parties that in the event that the parties did not settle the case, each would be directed to provide supplemental briefing and exhibits with respect to whether the contractual limitation provision restrained Plaintiff's right to bring a legal action arising out of the interpretation of the contract.

In response to the Court's Order, the parties each submitted supplemental briefs with exhibits and response briefs. Defendants advanced the two following primary arguments: (1) the Court lacks authority to toll a limitations period contained in an unambiguous contract provision requiring legal actions to be filed within three years, *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 815-20 (Mich. 2008), and (2) Plaintiff has not demonstrated a clear waiver nor each of the elements of equitable estoppel that would make the provision ineffective.

Plaintiff's supplemental brief reiterates his position that the limitations period attaches to

each miscalculation (i.e. every monthly calculation of benefits furnishes an independent cause of action for breach of contract). In the alternative, Plaintiff asserts that Defendant's conduct equates to waiver or that the Court should equitably estop Defendants from asserting the three year limitations period.

After review of the briefs, exhibits, and relevant authority, the Court will **GRANT** Defendants' motion for summary judgment. The Court will also **DENY** Plaintiff's motion for partial summary judgment. Although Plaintiff's motion advances a substantial basis for concluding Defendants misinterpreted the policies, Plaintiff's argument is moot because the action is time-barred by the policies' provisions requiring legal actions to be brought within three years of the proof loss. Finally, the Court will **DENY** as moot Defendant's motion to exclude Plaintiff as an expert witness.

Although the parties' motions were scheduled for hearing before this Court on August 14, 2008, the Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the briefs. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

From 1974 until 2001, Equitable employed Plaintiff as an agent selling various policies.[1] While employed by Equitable, Plaintiff purchased four long-term disability benefits policies in 1976 ("76"), 1979 ("79"), 1987 ("87"), and 1989 ("89"). Apparently, Plaintiff purchased these policies

---

[1] In 2001, Plaintiff and Equitable entered into a new employment contract as an independent contractor, which altered his status to a "retired, self-employed [a]gent and not a full-time [a]gent of Equitable." Dkt # 33-4 at 4.

as supplemental coverage, and Defendants did not provide these policies as a benefit of employment. In 1995, Plaintiff suffered a heart attack and qualified for disability benefits under the four policies. The policies provided supplemental income as a result of a reduced capacity to work. Plaintiff alleges that Defendants have continually miscalculated the amount owed under the policies. Plaintiff maintains that Defendants incorrectly categorized Plaintiff's renewal commissions as "monthly earned income" and have not paid COLA benefits as required by the policies.

Apparently, Defendant paid COLA benefits under the 87 and 89 plans, but not the 76 and 79 plans. All four plans, however, contain a provision providing COLA benefits. Though not entirely clear, Defendants' position is that Plaintiff does not qualify for the COLA benefits under the 76 and 79 policies because those policies require the holder to be totally disabled for twelve continuous months to be eligible for COLA benefits. Defendants assert that Plaintiff's breach of contract is barred by a provision contained in the four policies limiting civil actions to no more than three years after submitting a proof of loss. The policies state:

> **LEGAL ACTION**. No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after 3 years from the time written proof of loss is required to be given.

Dkt. # 21-6 at 13. The policies require that written proof of loss be provided as soon as "reasonably possible" after disability occurs. *See* dkt. # 21-3 at 8.

Factually, the disposition of the instant motions focus on the communications between the parties. Central to whether the contractual provision limiting legal actions to three years bars Plaintiff's claim for breach of contract is when Plaintiff became aware of the miscalculation. Equally as relevant are any representations by Equitable that it agreed with Plaintiff's interpretation of the policies or otherwise waived the provisions of the policies. In advance of their dispositive

-4-

motions, the parties submitted extensive exhibits documenting communications beginning in 1995 and continuing to the start of the present litigation.

On September 7, 1995, Plaintiff sent a facsimile responding to Equitable's letter that discussed Plaintiff's past earnings and renewal commissions. Plaintiff's facsimile cover sheet states as follows:

> As per your second paragraph on your letter dated 9/6/95 . . . renewal commissions are not considered earned income; they are considered deferred compensation from prior year sales. See definition of earned income on page 4 of one of my disability policies for the Residual Disability Income Provision.

Dkt. # 21-7 at 2. Moreover, Plaintiff (apparently) wrote on the side of the letter that renewal commissions are "not earned income for residual claims provision for my four disability policies, only first year commission should only (sic) be counted." *Id.* at 5. Plaintiff attached a copy of a policy with the monthly earned income provision underlined, which stated that "[m]onthly earned income does not include dividends, rents, investment income, royalties, annuities, deferred profit sharing, deferred compensation . . . " *Id.* at 6.

On May 20, 1996, Plaintiff sent a letter to an Equitable claim examiner, Raquel Williams. In that letter, Plaintiff inquired into his COLA benefits as follows:

> Enclosed are copies of my latest disability checks for my four disability income policies. Two of the policies reflect cost of living benefits with those policies being policy #87700169 and #88708248. However, disability income policies #76704770 and #79700723 do not reflect any cost of living benefits.
>
> I know that all four of these policies have COLA. So why would only two of the policies be paying the cost of living benefit and the other two not paying the cost of living benefit? Can you call me or write me in regards [sic] to this matter?

Dkt. # 21-10 at 2.

On August 20, 1996, Plaintiff sent another letter to Equitable disputing its calculation of

benefits. Dkt. # 44-3 at 22. Plaintiff expressed that he was "upset" and felt that he was "being cheated by Equitable on individual benefits . . . ." *Id.* at 22.

On September 9, 1996, Equitable responded after reviewing additional documentation. Dkt. # 44-3 at 23. Equitable provided the following analysis of Plaintiff's benefits under the policies:

> In regards [sic] to your inquiry concerning your renewals and service fees, our position is consistent with all Equitable agents who are receiving Disability Income benefits. We consider renewal commissions to be service fees. They are earned in the year in which they are paid. This cannot be considered as deferred compensation as you suggested.

*Id.*

On August 13, 2001, a DMS agent, acting as a third party administrator for Equitable, acknowledged in a letter that the COLA benefits had been incorrectly calculated for the 76 and 79 policies. The letter stated the following:

> In your July 3, 2001 letter, you indicated that your policy numbers 76704770 and 79700723 should have the Cost of Living Adjustment Benefit. We have received verification of this benefit from the Equitable Service Center. At this time, we are in the process determining your Cost of Living Adjustment Benefit for each month from January 24, 1996 to present. Once our review is complete, I will contact you.

Dkt. # 26-3 at 2.

On April 1, 2004, DMS claim consultant, Melanie Taylor, wrote a letter stating that Equitable and DMS acknowledged that the COLA benefits had been incorrectly calculated and that incorrect payments were made. Dkt. # 26-7 at 2. That letter, however, concluded that Plaintiff was not entitled to COLA benefits and that he had received overpayments as follows:

> Our records indicate you have only claimed a period of total disability for two months during your entire claim from January 24, 1995 through March 24, 1995. Given this information, you have not been continuously totally disabled for 12 months at any point during your claim and as a result, you are not entitled to receive an increase in your Monthly Income. Our records also reveal you have been claiming and receiving residual disability benefits for each month you have a loss

due to disability from April 25, 1995 through to date. Given this information, you are entitled to have the [cost of living factor] applied to your Prior Monthly Income (of $15,144.00) for each month that residual disability benefits are payable as per the COLA riders' provisions.

As I advised you during our conversations, a review of benefits paid to you each month under Policy Numbers 76704770 and 79700723 since the onset of disability reveals that an error has occurred in the calculation of your residual disability [cost of living factor]. As a result, a significant overpayment of $16,833.89 in residual disability benefits has been paid to you under these policies.

Dkt. # 26-7 at 3.

On September 15, 2004, counsel for the MONY life insurance company, Gerald J. Carroll, Jr., sent a letter informing Plaintiff that Defendants disagreed with Plaintiff's classification of renewal commissions as "Monthly Earned Income" and Plaintiff's calculations of COLA benefits under the 76 and 79 policies. Dkt. # 26-8 at 2. Carroll indicated that the parties "simply have a disagreement . . . and are evidently at an impasse." *Id.* at 3.

In an affidavit, Plaintiff stated that he "was never given any indication that [the] renewal commissions . . . would not be properly determined to be excluded, until receiving Attorney Gerald Carrol's September 15, 2004 correspondence . . . " Dkt. # 26-11 at ¶ 2. Plaintiff also indicated that he was never informed that Defendants would not determine whether "renewal commissions . . . were definitively classified as vested or . . . as 'Monthly Earned Income' . . . " *Id.* at ¶ 3. Finally, Plaintiff states that he filed the action "within three years of the Defendant's announcement [in the September 15, 2004 letter], as well as within a reasonable time following the denial of my administrative appeal with the Equitable organization." *Id.* at ¶ 7.

On November 22, 2006, Plaintiff filed a four count complaint alleging breach of contract, an ERISA action, promissory estoppel, and "conspiracy to wrongfully deny benefits in violation of unfair and deceptive trade practices statutes." The parties filed cross-motions for summary

judgment.

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

III

The cross-motions for summary judgment approach Plaintiff's breach of contract claim from different legal perspectives. Plaintiff raises substantive arguments in support of his belief that Defendants incorrectly interpreted the four policies such that he is entitled to COLA benefits under all four policies and that renewal commissions should not be included in the calculation of "monthly earned income." Defendants' motion, however, raises the preliminary argument that Plaintiff's claim for breach of contract is barred by a contractual provision requiring legal actions to be brought within three years. In response, Plaintiff asserts that the provision is ultimately inconsequential for two reasons. First, Plaintiff urges the Court to view each monthly calculation of benefits as grounds for an independent and discrete claim for breach of contract. Second, Defendant's conduct amounts to a waiver of the provision or grounds for applying equitable estoppel.

Additionally, Defendants assert that Plaintiff's remaining causes of action must be dismissed for alternative reasons.

A

Defendant contends that Plaintiff's breach of contract claim is barred by a contractual provision requiring that legal actions be brought within 3 years of the date of loss. It is undisputed that the date of loss occurred in 1995 and Plaintiff filed the instant complaint more than a decade later. The contractual provision limiting the time for legal actions is similar to the statute of limitations contained in the Disabilities Insurance Policies Chapter ("DIPC") of Michigan's Insurance Code of 1956. Mich. Comp. Laws §§ 500.3400 *et seq.* The DIPC requires that a contract for disability insurance shall include the following provision:

> LEGAL ACTIONS: No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

Mich. Comp. Laws § 500.3422. The DIPC's statute of limitations is three years shorter than Michigan's six year statute of limitations for a breach of contract claim. Mich. Comp. Laws § 600.5807(8). Although Michigan provides for a six year statute of limitations for a breach of contract, other courts have noted that an insurance contract may further restrict the time frame to bring suit. For instance, a fellow district court reasoned as follows:

> A contract for insurance may contain a shorter statute of limitations than the general 6-year contract limitations period provided in M.C.L.A. § 600.5807(8), particularly when the contract is drafted in accordance with the Michigan Insurance Code, M.C.L.A. 500.3400 *et seq. See Gipson v. Life Ins. Co. of North America*, 529 F.Supp. 224 (E.D.Mich.1981); *Tom Thomas Organization, Inc. v. Reliance Ins. Co.*, 396 Mich. 588, 592, 242 N.W.2d 396 (1976). Lawsuits claiming entitlement to S & A benefits have been barred when brought after expiration of a policy limitations period shorter than the 6-year statute for contract claims. *Bashans v. Metro Mutual Ins. Co.*, 369 Mich. 141, 119 N.W.2d 622 (1963); *Harris v. Phoenix Accident & Sick Benefit Ass'n*, 149 Mich. 285, 112 N.W. 935 (1907). Previously, this Court has upheld a 3-year statute of limitations provision contained in a disability insurance contract where the limitations language was virtually identical to the language in the GM Plan presently at issue. *Gipson v. Life Ins. Co. of North America, supra*.

*Roberson v. Metropolitan Life Ins. Co.*, 682 F.Supp. 907, 909 (E.D. Mich. 1988).

Recently, the Michigan Supreme Court addressed the enforceability of a provision in an insurance contract limiting the applicable statute of limitations as follows:

> We hold, first, that insurance policies are subject to the same contract construction principles that apply to any other species of contract. Second, unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written. We reiterate that the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of "reasonableness" as a basis upon which courts may refuse

to enforce unambiguous contractual provisions.

*Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). Ultimately, the Michigan Supreme Court found the one year contractual limitations period enforceable. *Id.*

Indeed, Defendants stress that the Michigan Supreme Court reinforced Michigan's view concerning contracts in *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 815-20 (Mich. 2008). In *McDonald*, the court made clear that "express limitations periods in optional insurance contracts are not automatically tolled as a matter of law by filing a claim" with the insurance provider. *Id.* at 817. The court noted, however, "that the traditional contract doctrines of waiver and estoppel are still viable . . . ." *Id.* at 819. Ultimately, *McDonald* restricts courts from tolling a contractual provision limiting the period for legal action on the sole basis of reasonableness.

Here, the contractual provision limiting legal actions is enforceable. First, the provision mirrors the statute of limitations set forth in Section 500.3422 of the DIPC. Second, the Michigan Supreme Court's decisions in *Rory* and *McDonald* indicate that courts are not authorized to modify unambiguous contract provisions.

Plaintiff filed his proof of loss in 1995. Moreover, the statements made in Plaintiff's 1995 and 1996 letters demonstrate that he was aware of the fact that Defendants disagreed with his interpretation of the policies. For instance, Plaintiff raised the classification of renewal commissions in his September 7, 1995 facsimile. Additionally, Plaintiff acknowledged the alleged miscalculation with respect to the determination of COLA benefits due under the 76 and 79 policies on May 20, 1996 . *See* Dkt. # 21-10 at 2. These two pieces of correspondence indicate that Plaintiff was aware of these issues in 1995 and 1996, soon after the date of loss. In 2006, Plaintiff filed his complaint well outside of the three year period to commence legal action.

The inquiry, thus, shifts to whether a basis exists, as Plaintiff suggests, to conclude the time restraints included in the policies are ineffective. Plaintiff contends that the limitation period begins to run when each payment is incorrectly calculated, analogizing the circumstance to an installment contract. Mich. Comp. Laws § 600.5836. Alternatively, Plaintiff asserts that Defendants' representations equate to an express waiver, or should serve as a basis for applying the doctrine of equitable estoppel. Defendant, on the other hand, disputes both of these contentions.

First, Plaintiff maintains that each time Defendants allegedly miscalculated his benefits under the policies that they breached the contract. The limitation period, thus, would begin to run with respect to each individual breach. In support of this proposition, Plaintiff offers *H.J. Tucker and Assoc., Inc. v. Allied Chucker and Eng'g Co.*, 595 N.W.2d 176, 183 (Mich. Ct. App. 1999), where the court concluded an employment contract that paid a commission-based salary was periodic in nature and the defendant's continuing non-payment constituted multiple, independent breaches of contract.

In *Tucker*, the distinct contracts arose from the plaintiff referring potential customers to the defendant. *Id.* at 179-80. The plaintiff sought payment for commissions generated from each of the referrals – some occurring outside of the limitations period and some within the limitations period. Ultimately, that court allowed the plaintiff to recover for breaches within the applicable statute of limitations, though the initial breach event occurred outside of the statutory period. *Id.* at 183.

For Plaintiff's reliance on section 600.5836 and *Tucker* to be effective, the Court must conclude that each monthly calculation is a discrete breach of the policies. Here, the instant insurance policies are materially different from an installment contract or commission contract, and *Tucker* is distinguishable. For instance, in *Tucker*, the plaintiff sought payment for a series of

individual and discrete referrals. There is no indication that the referrals were related to each other, except for the relationship between the plaintiff and defendant. In each of those instances, the amount owed under the contract was individually calculated after the defendant had provided services to the customer. Here, Defendants allegedly miscalculated the amount owed in 1995 and continued to pay the incorrect amount. Although Plaintiff maintains that each month Defendants re-calculated the amount owed under the policies, the dispute focuses on the parties' interpretation of the policies – i.e. the classification of renewal commissions and COLA benefits under the 76 and 79 policies. The parties' positions did not change from month to month (at least during the three year limitation period), and payment under the plan arose from Plaintiff's single disability. Plaintiff's action for breach of contract accrued when Defendants advanced their interpretation of Plaintiff's benefits under the policies.

Second, Plaintiff maintains that Defendants' conduct in determining Plaintiff's benefits effectively tolled the statute, such that Defendants are estopped from relying on a time limitation. Under Michigan law, "[a] waiver is a voluntary relinquishment of a known right." *McDonald*, 747 N.W.2d at 819 (citation omitted); *see also Sweebe v. Sweebe*, 712 N.W.2d 151, 156-57 (Mich. 2006); *see also People v. Cairnes*, 597 N.W.2d 130, 138 n. 7 (Mich. 1999). "For equitable estoppel to apply, plaintiff must establish that (1) defendant's acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) [plaintiff] was prejudiced as a result of her reliance on her belief that the clause would not be enforced." *McDonald*, 747 N.W.2d at 819.

Plaintiff also advances *Noel v. Fleet Finance, Inc.*, 971 F. Supp. 1102, 1110 (E.D. Mich. 1997), and *Compton v. Michigan Millers Mut. Ins. Co.*, 389 N.W.2d 111, 112-13 (Mich. Ct. App.

1986). In *Noel*, the plaintiffs alleged that the defendants "actively concealed" pertinent information, such that the plaintiffs did not have a reasonable opportunity to discover the alleged violations. 971 F.Supp. at 1110. The court found that allegation to be sufficient to survive a motion to dismiss for failure to state a claim. *Id.*

In *Compton*, the court concluded that "negotiations . . . deliberately intended to forestall commencement of an action, will be considered an inducement sufficient for application of the equitable estoppel theory." 389 N.W.2d at 112-13. The court noted, however, that "[t]o avoid a statute of limitations defense using an estoppel theory, a plaintiff must allege action by the defendant, such as concealment of a cause of action, misrepresentation as to the time in which an action may be brought, or inducement to refrain from bringing an action. *Id.* (*citing Robinson v. Associated Truck Lines, Inc*, 135 Mich.App. 571, 576, 355 N.W.2d 282 (1984)). Ultimately, the court found nothing in the record to support "bad faith" negotiations and concluded that the applicable statute of limitations barred the action. *Id.*

Here, Plaintiff has not demonstrated that waiver or equitable estoppel apply. There is no indication that Defendants knowingly relinquished their right to enforce the limitation provision. With respect to estoppel, Plaintiff is unable to advance a prima facie claim. Defendants' 2001 letter acknowledging that Defendants had incorrectly calculated Plaintiff's benefits was the misrepresentation that Plaintiff primarily appears to rely on. Even if this could be viewed as a misrepresentation, a proposition that does not seem to be borne out, the three year contractual limitation period expired more than two years prior in time. Although Plaintiff emphasizes that Defendants undertook actions to actively conceal relevant facts or engage in dialogue for the purposes of delaying Plaintiff from filing a civil action, the time line of events does not reasonably

support this view. The events that Plaintiff relies on occurred in 2001 or later, when his rights to bring a cause of action for breach of the policies had already extinguished. Thus, the Court will grant Defendants' summary judgment motion with respect to Plaintiff's breach of contract claim.

Consequently, the Court will also deny Plaintiff's motion for summary judgment. Plaintiff's summary judgment motion contends that there is no factual dispute regarding the meaning of certain provisions. Plaintiff's interpretation of the policies, advanced in his motion for summary judgment, addresses substantive issues that are inconsequential in light of the fact that the action is time barred.

B

Next, Defendants contend that Plaintiff's claim for promissory estoppel is ineffective when brought upon the same basis as a valid, express contract. "Promissory estoppel arises in equity when (1) there is a promise (2) that the promisor should have reasonably expected to induce action (3) which in fact produces reliance or forbearance (4) under circumstances such that the promise must be enforced if injustice is to be avoided." *APJ Assoc., Inc. v. North American Phillips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) (*citing Barber v. SMH, Inc.*, 509 N.W.2d 791 (Mich. Ct. App. 1993)). Under Michigan law, promissory estoppel is only applicable when "implied agreement exists between the parties, in the absence of an express contract." *Id.* Plaintiff's response brief acknowledges this point of Michigan law and that an express contract exists between the parties. Dkt. # 26 at 14-15. Although Plaintiff urges to permit his promissory estoppel claim to survive summary judgment based on Defendants' statements made "outside of the four corners of the policy," he has not offered any authority in support of that position. *Id.* The record demonstrates that the dispute arises directly out the interpretation of the policies, thus, Plaintiff's claim for promissory estoppel is limited by the express provision of the policies.

C

Defendants also contend that Plaintiff's "conspiracy" claim must be dismissed because a claim for conspiracy must be based on an underlying tort. A claim of civil conspiracy "may not exist in the air; rather it is necessary to prove separate, actionable tort." *Early Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 631-32 (1987); *see also Saloka v. Shelby Nursing Center Joint Venture*, 2005 WL 3304596, *8 (Mich. Ct. App. 2005) (Unreported); *see also Central Contracting, Inc. v. J.R. Heinman & Sons, Inc.*, 2004 WL 2624806, *5 (Mich. Ct. App. 2004) (Unreported). Here, Plaintiff has not advanced an independent tort. Thus, summary judgment with respect to Plaintiff's conspiracy claim is proper.

D

Finally, Plaintiff's claim under Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, should be dismissed. Simply stated, the instant policies are not governed by ERISA because they are not maintained, nor established by Plaintiff's employer. *See* 29 U.S.C. § 1003(a). Plaintiff has not alleged that they are apart of an employee benefit scheme. Thus, Plaintiff's ERISA claim should be dismissed.

IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [Dkt. # 21] is **GRANTED** and Plaintiff's motion for partial summary judgment [Dkt. # 33] is **DENIED**.

It is further **ORDERED** that Defendants' motion to disqualify Plaintiff's expert witness is **DENIED** as moot.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: August 20, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 20, 2008.

        s/Tracy A. Jacobs
        TRACY A. JACOBS